UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RENE A. LAUREANO, <br>     Plaintiff, <br><br> v. <br><br> DET. TIMOTHY RUDD, Jr., in his individual and official capacity; PROVIDENCE POLICE DEPARTMENT; and CITY OF PROVIDENCE, RHODE ISLAND, <br>     Defendants. | C.A. No. 25-cv-214-JJM-AEM |

### MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Before the Court are various motions stemming from an Amended Complaint filed by Rene A. Laureano against Detective Timothy Rudd, Jr., the Providence Police Department, and the City of Providence, Rhode Island. Mr. Laureano alleges that the Defendants violated his constitutional rights when they compelled him to register as a sex offender and then arrested him for failing to comply with Rhode Island's sex-offender registry law. ECF No. 13 at 1.

The motions are as follows: (1) the Defendants' Motion to Dismiss Mr. Laureano's Amended Complaint (ECF No. 22); (2) Mr. Laureano's Second Motion for a Protective Order (ECF No. 24); (3) Mr. Laureano's Second Motion for a Preliminary Injunction (ECF No. 25); and (4) Mr. Laureano's Second Motion for Equitable Tolling (ECF No. 26).

For the reasons stated below, the Court GRANTS the Defendants' Motion to Dismiss and DENIES WITHOUT PREJUDICE Mr. Laureano's motions for equitable tolling, a protective order, and a preliminary injunction. The Court GRANTS Mr. Laureano leave to file a Second Amended Complaint, should he elect to do so.

## I. BACKGROUND

### A. Factual Background

In 2017, Mr. Laureano pleaded guilty to transportation with intent to prostitute in violation of 18 U.S.C. § 2421(a) and 18 U.S.C. § 2. ECF No. 13 at 1; Ex. B, ECF No. 13-3 at 6. This Court entered judgment against Mr. Laureano and sentenced him to 24 months in prison. ECF No. 13-3 at 7.

On March 5, 2018, following Mr. Laureano's release from prison, Detective Rudd of the Providence Police Department arrested Mr. Laureano for failing to notify the police of his change in address in accordance with Rhode Island's sex-offender registry law.[1] ECF No. 13 at 1. A state court later dismissed this charge on September 28, 2018. ECF No. 18 at 1, 3. On February 20, 2019, the state court also

---

[1] Under Rhode Island law, sex offenders have a duty to notify law enforcement agencies of any change in address. *See* R.I. Gen. Laws Ann. § 11-37.1-9.

ordered that the arrest be sealed pursuant to R.I. Gen. Laws Ann. §§ 12-1-12[2] and 12-1-12.1.[3]  *Id.*

---

[2] Section 12-1-12 provides, in relevant part:

> Any fingerprint, photograph, physical measurements, or other record of identification, heretofore or hereafter taken by or under the direction of the attorney general, the superintendent of state police, the member or members of the police department of any city or town, or any other officer authorized by this chapter to take them, of a person under arrest, prior to the final conviction of the person for the offense then charged, shall be destroyed by all offices or departments having the custody or possession within sixty (60) days after there has been an acquittal, dismissal, no true bill, no information, or the person has been otherwise exonerated from the offense with which he or she is charged, and the clerk of court where the exoneration has taken place shall, consistent with § 12-1-12.1, place under seal all records of the person in the case including all records of the division of criminal identification established by § 12-1-4.

[3] Section 12-1-12.1 provides, in relevant part:

> Any person who is acquitted or otherwise exonerated of all counts in a criminal case, including, but not limited to, dismissals not described in subsection (a) of this section or filing of a no true bill or no information, may file a motion for the sealing of his or her court records in the case.
>> (1) Any person filing a motion for sealing his or her court records pursuant to this section shall give notice of the hearing date set by the court to the department of the attorney general and the police department that originally brought the charge against the person at least ten (10) days prior to the hearing.
>> (2) If the court, after the hearing at which all relevant testimony and information shall be considered, finds that the person is entitled to the sealing of the records, it shall order the sealing of the court records of the person in that case.
>> (3) The clerk of the court shall, within forty-five (45) days of the order of the court granting the motion, place under seal the court records in the case in which the acquittal, dismissal, no true bill, no information, or other exoneration has been entered.

3

More than six years later, on August 10, 2025, Mr. Laureano obtained a copy of his Rhode Island Bureau of Criminal Identification and Investigation ("BCI") background check report. Ex. A, ECF No. 13-2 at 1, 2. The BCI report continued to list Mr. Laureano's March 5, 2018 arrest and indicated that he had been charged with the felony of being a "Registered Sex Offender Living w/in 300 Feet of a School."[4] *Id.* at 3.

### B. Procedural Background

Mr. Laureano filed his original Complaint on May 16, 2025. ECF No. 1. Because Mr. Laureano filed the Complaint after the relevant statute of limitations period had lapsed and because he failed to assert any allegations in support of municipal liability, this Court dismissed the Complaint. ECF No. 7 at 1-2.

Mr. Laureano subsequently filed a Motion for Reconsideration of the Court's earlier dismissal of the action, as well as a Motion to Amend the Complaint. ECF No. 8. The Court granted both motions and vacated its dismissal of the Complaint. *See* Text Order (July 25, 2025).

Mr. Laureano submitted his Amended Complaint on August 21, 2025. ECF No. 13. In it, Mr. Laureano brings a 42 U.S.C. § 1983 claim, alleging that the

---

[4] It is important to note, as Mr. Laureano points out, that this is an entirely distinct offense from the one Detective Rudd charged him with in 2018. *See* Ex. A, ECF No. 13-1 at 1. As the state court noted, the 2018 charge against Mr. Laureano was for "Failure to Notify Of Change In Address" in violation of R.I. Gen. Laws Ann. § 11-37.1-9. ECF No. 18 at 3. By contrast, a *different* statutory provision makes it a crime to be a "Registered Sex Offender Living w/in 300 Feet of a School." *See* R.I. Gen. Laws Ann. § 11-37.1-10; *see also State v. Germane*, 971 A.2d 555, 578 n.30 (R.I. 2009). There is no evidence in the record to suggest that Mr. Laureano was charged under R.I. Gen. Laws Ann. § 11-37.1-10.

4

Defendants violated his rights under the First, Fourth, Eighth, and Fourteenth Amendments by compelling him to register as a sex offender and then later arresting him for failing to comply with Rhode Island's sex-offender registry law. *Id.* at 1. The Defendants have moved to dismiss the Amended Complaint for failure to state a claim and have also moved, in the alternative, for judgment on the pleadings or for summary judgment. ECF No. 22 at 1.

Since filing his Amended Complaint, Mr. Laureano has also filed a Second Motion for a Protective Order, a Second Motion for a Preliminary Injunction, and a Second Motion for Equitable Tolling.[5] ECF Nos. 24, 25, 26.

## II. STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing whether the complaint meets the plausibility standard, the Court must "construe all factual allegations in the light most favorable to the non-moving party." *Wilson v. HSBC Mortg. Servs., Inc.*, 744 F.3d 1, 7 (1st Cir. 2014) (quoting *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007)).

---

[5] The Court earlier denied, without prejudice, Mr. Laureano's First Motion for Equitable Tolling (ECF No. 3), First Motion for a Protective Order (ECF No. 14), and First Motion for a Preliminary Injunction (ECF No. 14). *See* Text Order (Sept. 5, 2025). The Court permitted Mr. Laureano to refile these motions after the Defendants had been served and had filed their responsive pleading. *Id.*

5

## III.   DISCUSSION

### A.   Statute of Limitations

This Court previously dismissed Mr. Laureano's action because it was time-barred. ECF No. 7 at 1-2. Claims brought under § 1983 "take[ ] the statute of limitations from the underlying state cause of action." *Pérez–Sánchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir. 2008) (quoting *Owens v. Okure*, 488 U.S. 235, 240-41 (1989)). In Rhode Island, the statute of limitations period for § 1983 claims is three years. *Bergevine v. D.C.Y.F.*, No. 21-cv-459-WES-PAS, 2021 WL 5997649, at *2 (D.R.I. Dec. 20, 2021) (citing R.I. Gen. Laws Ann. § 9-1-14(b))). The Court therefore concluded that Mr. Laureano, who brought this action "seven years after the offending incident," missed the statute of limitations by some four years. ECF No. 7 at 2.

In his Amended Complaint, Mr. Laureano invokes equitable tolling (ECF Nos. 23, 26) and the continuing violation doctrine (ECF Nos. 23, 26, 33) in an attempt to overcome the statute of limitations. The Court will address these two arguments in turn.

#### 1.   Equitable Tolling

The statute of limitations period for a claim brought under § 1983 normally commences at the time of the plaintiff's injury. *See Jardín Be Las Catalinas Ltd. P'ship v. Joyner*, 766 F.3d 127, 133 (1st Cir. 2014); *see also Wallace v. Kato*, 549 U.S. 384, 388 (2007). However, the equitable tolling doctrine "extends statutory deadlines in extraordinary circumstances for parties who were prevented from complying with

6

them through no fault or lack of diligence of their own." *Neves v. Holder*, 613 F.3d 30, 36 (1st Cir. 2010) (citing *Fustaguio Do Nascimento v. Mukasey*, 549 F.3d 12, 18-19 (1st Cir. 2008); *Gonzalez v. United States*, 284 F.3d 281, 291 (1st Cir. 2002)). It is a rare remedy to be applied sparingly by the courts. *See Foss v. E. States Exposition*, 149 F.4th 102, 112 (1st Cir. 2025) (citing *Abraham v. Wood Hole Oceanographic Inst.*, 553 F.3d 114, 119 (1st Cir. 2009)).

For equitable tolling to apply, a plaintiff has the burden of establishing: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Neves*, 613 F.3d at 36 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The doctrine "provides no relief to a plaintiff who knows of facts sufficient to bring the cause of action." *Abdallah v. Bain Cap. LLC*, 752 F.3d 114, 120 (1st Cir. 2014). Indeed, to invoke equitable tolling, the plaintiff "must at the very least show that the information *could not* have been found by a timely diligent inquiry…." *Bernier v. Upjohn Co.*, 144 F.3d 178, 180 (1st Cir. 1998) (emphasis in original).

In the present case, the statute of limitations commenced for Mr. Laureano when Detective Rudd arrested him on March 5, 2018. ECF No. 13 at 1. Though the three-year statute-of-limitations period lapsed in 2021, Mr. Laureano filed this action four years later in 2025. *Id.* Mr. Laureano contends that he "has been prevented from timely asserting his rights due to circumstances outside his control or due to the misconduct of the opposing party." ECF No. 26 at 1. More specifically, he claims that equitable tolling is warranted in his case because of "[n]ewly discovered evidence [he]

7

could not have known earlier." *Id.* at 2.  This evidence is a criminal background check report, generated by the BCI on August 10, 2025, that continues to list Mr. Laureano's arrest, despite a 2019 court order requiring this arrest record be sealed.  ECF No. 23 at 1; Ex. A, ECF No. 13-2 at 1, 2.

Mr. Laureano's argument is unavailing.  He acknowledges that the harms he has alleged in his Amended Complaint, including his "denial of housing, denial of banking services, and loss of employment opportunities," ECF No. 13 at 1, stem from his March 5, 2018 arrest and have been ongoing for the past seven years.  *See* ECF No. 23 at 1.  If Mr. Laureano has been denied housing, banking, and employment opportunities since 2018, then a diligent inquiry into his criminal background check report would have revealed that his 2018 arrest remained on his record.  *Bernier*, 144 F.3d at 180; *see also Williams v. City of Brockton*, 59 F. Supp. 3d 228, 242 (D. Mass. 2014) (declining to apply equitable tolling where an earlier "diligent inquiry" by plaintiff would have revealed information necessary for him to file a timely complaint).

Mr. Laureano argues that his 2018 arrest should have never appeared in his background check in the first place because a state court ordered the record sealed in 2019.[6]  Ex. A, ECF No. 13-2 at 1, 2.  Even assuming that information appeared

---

[6] Mr. Laureano also contends that the state court itself erred when it ordered his arrest record "sealed" rather than "expunged."  ECF No. 23 at 5; ECF No. 33 at 1-2.  To clear up some confusion, "sealing" comes into play "after there has been an acquittal, *dismissal*, no true bill, no information, or the person has been otherwise exonerated from the offense with which he or she is charged…."  R.I. Gen. Laws Ann. § 12-1-12(a)(1) (emphasis added).  By contrast, "expungement" factors in when a person has been *convicted* of an offense.  R.I. Gen. Laws Ann. § 12-1.3-3(c).

8

wrongfully on his background check,[7] there was a two-year period between 2019 and 2021—a period in which the harm he alleges was actively occurring—during which Mr. Laureano could have discovered this information and brought this lawsuit. *See Bernier*, 144 F.3d at 180; *Williams*, 59 F. Supp. 3d at 242.

Mr. Laureano further contends that his post-traumatic stress disorder ("PTSD") serves as a basis for equitable tolling. ECF No. 26 at 2, 4. The First Circuit has recognized that equitable tolling is available to plaintiffs who can show that their mental disabilities are so severe that they are "[un]able to engage in rational thought and deliberate decision making sufficient to pursue [their] claim alone or through counsel." *Melendez-Arroyo v. Cutler-Hammer de P.R. Co., Inc.*, 273 F.3d 30, 37 (1st Cir. 2001) (quoting *Nunnally v. MacCausland*, 996 F.2d 1, 5 (1st Cir. 1993)); *see also Bartlett v. Dep't of the Treasury (I.R.S.)*, 749 F.3d 1, 14 (1st Cir. 2014). However, merely establishing that a physician rendered a mental disability diagnosis is not enough to merit equitable tolling. *Melendez-Arroyo*, 273 F.3d at 37 (citing *Lopez v. Citibank*, 808 F.2d 905, 907 (1st Cir. 1987)).

Mr. Laureano does provide a PTSD diagnosis from a psychiatrist at Boston Medical Center. *See* Ex. N, ECF No. 13-14 at 2. However, he does not provide any evidence to show that his PTSD was so severe as to deprive him of the ability to

---

In Mr. Laureano's case, there was no conviction to expunge because the charges against him were dismissed. *See Tarzia v. State*, 44 A.3d 1245, 1253 (R.I. 2012) (distinguishing between Rhode Island's sealing and expungement statutory provisions). Therefore, the state court properly ordered Mr. Laureano's arrest record sealed.

[7] The Court need not decide this question today.

9

engage in rational thought or deliberate decision making. *Melendez-Arroyo*, 273 F.3d at 37; *Bartlett*, 749 F.3d at 14. He maintains only that his PTSD left him "significantly impaired and unable to prepare or file litigation sooner." ECF No. 26 at 2. This diagnosis, by itself, is not enough to establish an entitlement to equitable tolling. *Melendez-Arroyo*, 273 F.3d at 37; *see also Vazquez-Rivera v. Figueroa*, 759 F.3d 44, 50-51 (1st Cir. 2014) (declining to apply equitable tolling where appellant's claims of severe mental illness were "unaccompanied by so much as the suggestion that the illness rendered the appellant unable to understand or act on his legal rights").

Accordingly, the Court concludes that Mr. Laureano has failed to establish that equitable tolling of the statute of limitations is warranted in his case.

### 2. Continuing Violation Doctrine

Mr. Laureano also contends that his claims are not time-barred because of the continuing violation doctrine. ECF Nos. 23, 26, 33. "Under this doctrine, a plaintiff can recover for injuries that occurred outside the statute of limitations under certain narrow conditions." *Pérez–Sánchez*, 531 F.3d at 107. Although this doctrine is generally invoked in Title VII and other discrimination cases, *see Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130 (1st Cir. 2009), it has been applied to § 1983 cases in some other circumstances as well. *See, e.g., Richer v. Parmelee*, 388 F. Supp. 3d 97, 105 (D.R.I. June 4, 2019) (applying doctrine to Fourth Amendment claim brought under § 1983); *Solas v. Town of S. Kingstown*, No. 24-cv-310-MRD-LDA, 2025 WL 1384309, at *5-6 (D.R.I. May 13, 2025) (applying doctrine to First Amendment and

Equal Protection claims brought under § 1983). Accordingly, the Court will consider the doctrine in the present context as well.

When evaluating a continuing violation argument, courts primarily look to the "accrual date," which is the date when the statute of limitations for a particular claim begins to run. *See, e.g.*, *Richer*, 388 F. Supp. 3d at 105; *Solas*, 2025 WL 1384309, at *5-6. Section 1983 claims accrue "at the moment the plaintiff knows, or has reason to know, of the injury that is the basis for the claim." *Nieves v. McSweeney*, 241 F.3d 46, 52 (1st Cir. 2001) (citing *Calero-Colon v. Betancourt-Lebron*, 68 F.3d 1, 3 (1st Cir. 1995)). "[T]he proper focus for accrual purposes is on the time of the alleged unlawful acts, 'not upon the time at which the *consequences* of the acts became most painful.'" *Richer*, 388 F. Supp. 3d at 105 (quoting *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)); *see also Muñiz-Rivera v. United States*, 204 F. Supp. 2d 305, 315 (D.P.R. 2002), *aff'd*, 326 F.3d 8 (1st Cir. 2003) ("A continuing violation occurs when there is a series of continual unlawful acts, *not* when there are merely continual harmful effects from an original unlawful act.").

In this case, the statute of limitations began running for Mr. Laureano when he was arrested on March 5, 2018—this is the allegedly unlawful act that is the basis for his action. *See* ECF No. 13 at 1. He first claims that the continuing violation doctrine should apply to him because he has experienced "[f]resh injuries in 2025," including a revoked job offer from Superior Propane and a housing application denial by the Waltham Housing Authority. ECF No. 23 at 7; Ex. X, ECF No. 28-2; Ex. Y, ECF No. 28-3. But these are undoubtedly "consequences," or "continual harmful

11

effects," that flow from the 2018 arrest; they are not continual unlawful acts in and of themselves. *See Richer*, 388 F. Supp. 3d at 105; *Muñiz-Rivera*, 204 F. Supp. 2d at 315. Even if they were, the Defendants did not themselves commit either of these acts and thus cannot be held liable for them.

Mr. Laureano also suggests that the continuing violation doctrine should apply to him because of "ongoing record contamination." ECF No. 23 at 7. He seems to argue that the "continual unlawful act" is Defendant City of Providence's "[failure] to remove [his] arrest from RI BCI for six years" after a state court had previously ordered the arrest sealed in 2019. ECF No. 33 at 1. Even if this arrest were to have unlawfully appeared on Mr. Laureano's criminal record,[8] neither the City of Providence nor the other two named Defendants are responsible for maintaining Rhode Island criminal background check reports. This responsibility belongs instead to the Bureau of Criminal Identification and Investigation, which is under the control of the state's Attorney General. *See State v. Manocchio*, 743 A.2d 555, 557-58 (R.I. 2000) (recognizing that the Rhode Island legislature "has established a specific statutory scheme for maintaining, handling, expunging, and sealing BCI records that are under the control of the Attorney General"). In other words, none of the Defendants can be held liable for this allegedly unlawful act either. *Richer*, 388 F. Supp. 3d at 105. As such, the continuing violation doctrine does not apply under these circumstances.

---

[8] Again, the Court need not decide this question here.

But this determination does not leave Mr. Laureano without a means to challenge the 2018 arrest's continued appearance on his BCI report. Given his *pro se* status, Mr. Laureano is to be accorded greater leniency than the typical plaintiff who is represented by counsel. *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). This of course does not insulate him "from complying with procedural and substantive law." *Id.* (citing *Eagle Eye Fishing Corp. v. U.S. Dep't of Com.*, 20 F.3d 503, 506 (1st Cir. 1994)). But it does provide a compelling reason to grant him the opportunity to amend his complaint so that he may name the proper defendant who might be able to provide him with the relief he requests. *Cf. Abernathy v. Dewey*, 196 F. Supp. 3d 157, 167-68 (D. Mass. 2016) (permitting plaintiff to amend his § 1983 complaint to add new defendants "in light of [his] *pro se* status"). As the one responsible for maintaining BCI records, that proper defendant is likely the Rhode Island Attorney General. *See Manocchio*, 743 A.2d at 557-58.

## IV. CONCLUSION

For the reasons stated, the Court GRANTS the Defendants' Motion to Dismiss (ECF No. 22). The Court DENIES WITHOUT PREJUDICE Mr. Laureano's Second Motion for Equitable Tolling (ECF No. 26), his Second Motion for a Protective Order (ECF No. 24), and his Second Motion for a Preliminary Injunction (ECF No. 25).

Should Mr. Laureano choose to file a Second Amended Complaint to add the proper defendant, the Court will GRANT him leave to do so under Rule 15(a)(2) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

December 12, 2025

14